Timothy L. Alger, Bar No. 160303
TAlger@perkinscoie.com
Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Attorneys for Defendant
Facebook, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIKHS FOR JUSTICE "SFJ", INC., <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 5:15-cv-02442-LHK <br><br> DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6), AND SPECIAL MOTION TO STRIKE AND FOR ATTORNEYS' FEES AND COSTS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT <br><br> Date:　　November 5, 2015 <br> Time:　　1:30 p.m. <br> Place:　　Courtroom 8, 4th Floor <br> Judge:　　Hon. Lucy H. Koh |

TABLE OF CONTENTS

PAGE

I.     INTRODUCTION .......................................................................................... 2

II.    BACKGROUND AND SUMMARY OF ALLEGED FACTS ...................... 3

III.   LEGAL STANDARD FOR A MOTION TO DISMISS ............................... 4

IV.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
       STATE A CLAIM FOR RELIEF ................................................................. 5

       A.     Plaintiff's Entire Complaint Is Barred by the CDA. ................... 5

              1.     The CDA's immunity extends to Facebook. ..................... 6

              2.     SFJ cannot pursue a claim against Facebook for
                     removal of content. ........................................................... 6

       B.     Plaintiff's Entire Complaint is Barred by the First
              Amendment. ................................................................................ 8

       C.     Plaintiff Cannot State a Claim Under the Federal Civil
              Rights Act. ................................................................................ 10

              1.     Facebook's social media platform is not a "place of
                     public accommodation." ................................................ 10

              2.     Title II does not have extraterritorial application. ........... 11

       D.     Plaintiff Fails to State a Claim Under the Unruh Act
              Because the Alleged Discrimination Did Not Occur in
              California. ................................................................................ 12

       E.     Plaintiff Fails to State a Claim for Breach of Contract
              Because Plaintiff Has Not Alleged a Breach or Damages. ....... 13

              1.     Plaintiff has not alleged an agreement or a breach. ........ 13

              2.     Plaintiff has not alleged any actual damages. ................. 15

       F.     Plaintiff Fails to State a Claim for Breach of the Implied
              Covenant of Good Faith and Fair Dealing. .............................. 15

V.     PLAINTIFF'S STATE LAW CLAIMS SHOULD BE STRICKEN
       AND FEES AWARDED UNDER THE ANTI-SLAPP STATUTE ............ 17

       A.     The State Law Claims Are Subject to Dismissal Under
              Section 425.16 of the Code of Civil Procedure. ...................... 17

       B.     Facebook Should be Awarded its Attorneys' Fees and
              Costs. ....................................................................................... 19

VI.    CONCLUSION ........................................................................................ 20

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ............................................................... 15

*Alam v. P.I.A.*,
1995 WL 1720139 (S.D.N.Y. July 27, 1995) .............................. 11, 12

*Ampex Corp. v. Cargle*,
128 Cal. App. 4th 1569 (2005) ............................................................ 18

*Apple In-App Purchase Litig.*,
855 F. Supp. 2d 1030 (N.D. Cal. 2012) ............................................. 16

*Ashcroft v. Am. Ciiv. Liberties Union*,
535 U.S. 564 (2002) ............................................................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 5

*Barrett v. Rosenthal*,
40 Cal. 4th 33 (2006) ........................................................................ 18

*Batzel v. Smith*,
333 F. 3d 1018 (9th Cir. 2003) ............................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 4

*Carafano v. Metrosplash.com, Inc.*,
207 F. Supp. 2d 1055 (C.D. Cal. 2002), *aff'd*, 339 F.3d 1119 (9th
Cir. 2003) ............................................................................................ 6

*Carma Developers, Inc. v. Marathon Development California, Inc.*,
2 Cal. 4th 342 (1992) ....................................................................... 16

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ............................................................... 6

*Dove Audio, Inc. v. Rosenfield, Meyer, & Susman*,
   47 Cal. App. 4th 777 (1996) ................................................................. 20

*Fair Housing Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ............................................ 5, 6, 7, 12

*First Commercial Mtg. Co. v. Reece*,
   89 Cal. App. 4th 731 (2001) .............................................................. 13

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y 2012) .............................................. 14

*Gaston v. Facebook, Inc.*,
   2012 WL 629868 (D. Or. Feb. 2, 2012) ............................................ 6

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
   63 F. Supp. 2d 1127 (N.D. Cal. 1999) .............................................. 17

*Goddard v. Google, Inc.*,
   2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .................................... 6

*Goddard v. Google Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................. 5

*Good Gov't Group v. Superior Court*,
   22 Cal. 3d 672 (1978) ......................................................................... 17

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ....................................................................... 16

*Harm v. Frasher*,
   181 Cal. App. 2d 405 (1960) ............................................................. 15

*Holomaxx Technologies v. Microsoft Corp.*,
   783 F. Supp. 2d 1097 (N.D. Cal. 2011) .............................................. 5

*Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston*,
   515 U.S. 557 (1995) ............................................................................. 9

*In re Facebook PPC Advertising Litig.*,
   709 F. Supp. 2d 762 (N.D. Cal. 2010) ............................................... 16

*Jones v. Block*,
   549 U.S. 199 (2007) ............................................................................. 5

-ii-

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001).......................................................................................19

*Keum v. Virgin America Inc.,*
    781 F. Supp. 2d 944 (N.D. Cal. 2011)...............................................................12

*Klayman v. Zuckerberg,*
    753 F.3d 1354 (D.C. Cir. 2014) ......................................................................6, 7

*Langdon v. Google Inc.,*
    474 F. Supp. 2d 622 (D. Del. 2007) .....................................................................9

*Leadsinger, Inc. v. BMG Music Publ'g,*
    429 F. Supp. 2d 1190 (C.D. Cal. 2005)................................................................5

*Levitt v. Yelp! Inc.,*
    2011 WL 5079526 (N.D. Cal. Oct. 26, 2011)...................................................7, 8

*Low v. LinkedIn Corp.,*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012)..............................................................15

*Mauzer v. eBay,*
    2008 WL 618988 (N.D. Cal. Mar. 4, 2008) .........................................................7

*Miami Herald Publ'g Co. v. Tornillo,*
    418 U.S. 241 (1974) ..............................................................................................8

*Miron v. Hermalife Int'l, Inc.,*
    11 Fed. Appx. 927 (9th Cir. 2001) .....................................................................13

*Navellier v. Sletten,*
    29 Cal. 4th 82 (2002)....................................................................................17, 18

*Noah v. AOL Time Warner, Inc.,*
    261 F. Supp. 2d 532 (E.D. Va. 2003).......................................................6, 10, 11

*Patent Scaffolding Co. v. William Simpson Const. Co.,*
    256 Cal. App. 2d 506 (1967) ..............................................................................15

*Pfeiffer Venice Properties v. Bernard,*
    101 Cal. App. 4th 211 (2002)..............................................................................19

*Rivero v. American Fed. of State, County, & Municipal Employees,*
    105 Cal. App. 4th 913 (2003)..............................................................................19

*Rosenfield v. JPMorgan Chase Bank, N.A.*,
    732 F. Supp. 2d 952 (N.D. Cal. 2010)...................................................... 16

*Schulken v. Wash. Mut. Bank*,
    2009 WL 4173525 (N.D. Cal. Nov. 19, 2009)....................................... 16

*Simmons v. Allstate Ins. Co.*,
    92 Cal. App. 4th 1068 (2001)................................................................ 17

*SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*,
    88 F.3d 780 (9th Cir. 1996) .................................................................... 4

*Souryal v. Torres Advanced Enterprise Solutions, LLC*,
    847 F. Supp. 2d 835 .............................................................................. 12

*Sousanis v. Northwest Airlines, Inc.*,
    2000 WL 34015861 (N.D. Cal. Mar. 3, 2000) ...................................... 12

*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines
    Ins. Co.*, 101 Cal. App. 4th 1038 (2002) ............................................. 15

*Tat Tohumculuk, A.S. v. H.J. Heinz Co.*,
    2013 WL 6070483 (E.D. Cal. Nov. 14, 2013) ...................................... 12

*U.S. v. Alvarez*,
    __ U.S. __, 132 S. Ct. 2537 (2012) ........................................................ 8

*United States ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999)................................................................. 17

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000)............................................................... 11

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004)................................................................ 18

*Wong v. Jing*,
    189 Cal. App. 4th 1354 (2010).............................................................. 18

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011)...................................... 11, 13, 14

*Yount v. Acuff Rose-Opryland*,
    103 F.3d 830 (9th Cir. 1996) ................................................................ 14

*Zepeda v. PayPal, Inc.*,
  777 F. Supp. 2d 1215 (N.D. Cal. 2011).................................................................14

*Zeran v. Am. Online*,
  129 F.3d 327 (1997) ...............................................................................................7

*Zhang v. Baidu.com Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y 2014) .............................................................8, 9, 10

**STATUTES**

Civil Rights Act of 1964, 42 U.S.C. § 2000a ........................................................*passim*

Communications Decency Act, 47 U.S.C. § 230 ...................................................*passim*

Cal. Civ. Code § 1636.....................................................................................................14

Cal. Civ. Code § 51.............................................................................................2, 12, 13

Cal. Civ. Proc. Code § 425.16 .......................................................................3, 17, 18

**RULES**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................*passim*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 5, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 8, 4th Floor of the United States District Court, Northern District of California, 280 South 1st Street, San Jose, CA 95113, before the Honorable Lucy H. Koh, Defendant Facebook, Inc. ("Facebook") will, and hereby does, bring a motion for an order dismissing the Complaint in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff fails to allege facts sufficient to state any claim upon which relief can be granted.

Facebook also moves for an order striking the following causes of action pursuant to Section 425.16 of the California Code of Civil Procedure:  (1) Violation of the Unruh Civil Rights Act, (2) Breach of Contract, and (3) Breach of the Implied Covenant of Good Faith and Fair Dealing.  There is no probability that Plaintiff can prevail on those claims.  Facebook also seeks an order awarding Facebook its reasonable costs and attorneys' fees.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Jeremy Jordan, Facebook's Request for Judicial Notice, any reply memorandum, the filings in this action, and such other matters as may be presented at or before the hearing.

Dated:  July 24, 2015                                   PERKINS COIE LLP

                                                        By: _____*/s/  Timothy L. Alger*_____
                                                                   Timothy L. Alger

                                                        Attorneys for Defendant
                                                        FACEBOOK, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Sikhs for Justice "SFJ", Inc. ("Plaintiff" or "SFJ") is suing Facebook, Inc. ("Facebook") because it believes that Facebook is obligated to make SFJ's Facebook page available to users located in India.  Plaintiff has no cognizable legal theory on which to sue Facebook, and its claims are absolutely barred by federal statute and the First Amendment.

The Communications Decency Act, 47 U.S.C. § 230 ("CDA"), prohibits the imposition of any liability arising from decisions by an online platform to remove third-party content from its service -- the very conduct challenged by Plaintiff here.  Similarly, the First Amendment protects Facebook's decision to remove user content, even where Plaintiff asserts that such a decision discriminates against Plaintiff's views.  The Court can and should dismiss the entire Complaint with prejudice on these grounds alone.

The Complaint also fails because Plaintiff is unable to state any viable claim against Facebook.

Plaintiff's first and second claims for relief, alleging a violation of Title II of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000a, fail for at least two reasons:  First, Facebook is not a physical location, and therefore does not qualify as a "place of public accommodation" within the meaning of Title II; and second, the alleged discrimination occurred in India, and Title II does not protect against discrimination occurring outside the boundaries of the United States.

Plaintiff's third claim for relief, for a violation of California's Unruh Act, Cal. Civ. Code §§ 51 *et seq*., fails because Plaintiff is located in New York, the alleged discrimination occurred in India, and the Unruh Act only applies to discrimination occurring within California's borders.

Plaintiff's fourth claim for relief, alleging breach of contract, fails because Plaintiff does not adequately allege the elements of a contract, breach, or damage.

The Complaint does not specify any contract or explain how restricting access to the SFJ Page in India constitutes a breach of any agreement.  The only contract between the parties is Facebook's Statement of Rights and Responsibilities, which states that Facebook retains discretion over what content appears on its service. Plaintiff's contract claim also fails because Plaintiff does not allege how restricting access to the SFJ Page in India has resulted in any actual damage to Plaintiff.

Plaintiff's fifth claim for relief, alleging breach of the duty of good faith and fair dealing, fails because the express terms of the parties' contract permit the very conduct that Plaintiff is suing for.  It also is duplicative of Plaintiff's breach of contract claim, and superfluous.

Because all of Plaintiff's claims are absolutely barred by the CDA and the First Amendment, and each claim fails as a matter of pleading, the Complaint should be dismissed pursuant to Rule 12(b)(6) in its entirety, with prejudice.

Further, given the foregoing, there is no probability that Plaintiff will prevail. The state law claims should be stricken pursuant to the California anti-SLAPP statute, Civ. Proc. Code § 425.16, and Facebook should be awarded its fees and costs.

## II.   BACKGROUND AND SUMMARY OF ALLEGED FACTS

Facebook offers a free online social networking service that enables people all over the world to connect and share information with others.  To join Facebook, a person must agree to Facebook's Statement of Rights and Responsibilities ("SRR").  (Declaration of Jeremy Jordan In Support of Facebook's Motion to Dismiss ("Jordan Decl."), ¶ 4.)  The SRR establishes that Facebook "can remove any content or information [a user posts] on Facebook if we believe that it violates this Statement or our policies."  (Jordan Decl., Exh. 1 (SRR, ¶ 5.2) and ¶ 5.)

Plaintiff Sikhs For Justice "SFJ", Inc. ("Plaintiff" or "SFJ") describes itself as a New York-based non-profit organization focused on "the plight of religious minorities in India and their treatment by the . . . Indian Government[]."

-3-

1   (Complaint at 6.)  SFJ has a Facebook page ("SFJ Page")[1] that advocates religious

2   separatism in India, including an independent Sikh nation in Punjab.  (*Id*. at 1-3.)

3   SFJ appears to operate its own Internet website (http://www.sikhsforjustice.org/)

4   and has accounts on other services like Twitter (https://twitter.com/sikhsforjustice).

5         SFJ alleges that around the first week of May 2015, it learned that Facebook

6   had restricted access to the SFJ Page in India.  (*Id*. at 1-2, 7-8.)  SFJ claims that

7   Facebook's decision was discriminatory, as it was based on SFJ's "constitutionally

8   protected political and human rights related activities," and specifically the various

9   social and political messages on the SFJ Page.  (*Id*. at 1-2.)  SFJ does not allege that

10  access has been restricted anywhere other than India.

11        SFJ is suing Facebook for (1) violations of the federal Civil Rights Act of

12  1964, 42 U.S.C. § 2000a, (2) California's Unruh Act, Civil Code §§ 51 *et seq.*, (3)

13  breach of contract, and (4) breach of the implied covenant of good faith and fair

14  dealing.  SFJ seeks a permanent injunction requiring Facebook to stop blocking

15  access to the SFJ Page in India, as well as monetary damages and other relief.  (*Id.*

16  at 9, 14-15.)

17  **III.   LEGAL STANDARD FOR A MOTION TO DISMISS**

18        Under Rule 12(b)(6), a complaint may be dismissed based on (1) "lack of

19  cognizable legal theory;" or (2) "insufficient facts under a cognizable legal claim."

20  *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*, 88 F.3d 780, 783 (9th Cir.

21  1996).  To withstand a motion to dismiss, a plaintiff must allege "enough facts to

22  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

23  U.S. 544, 569 (2007).  While factual allegations in a complaint are assumed true,

24  courts are "not bound to accept as true a legal conclusion couched as a factual

25  allegation," and "[t]hreadbare recitals of the elements of a cause of action,

26

27  _____
    [1] SFJ's Facebook page can be seen at: www.Facebook.com/sikhsforjusticepage.
28  (Complaint at 1.)

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Affirmative defenses may be considered on a Rule 12(b)(6) motion where they are "apparent from the face of the [c]omplaint." *Holomaxx Technologies v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2011) (dismissing claims against ISP for filtering spam, pursuant to the CDA) (citing ***Jones v. Block,*** **549 U.S. 199, 215 (2007)**, and other authorities).

A complaint may be dismissed without leave to amend where "amendment would be futile." *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005). Dismissal with prejudice is appropriate where the plaintiff asserts claims barred by the CDA. *See, e.g., Goddard v. Google Inc.,* 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009). The CDA "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* (quoting *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*) ("*Roommates*")).

## IV.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF

### A.   Plaintiff's Entire Complaint Is Barred by the CDA.

Plaintiff's suit should be dismissed in its entirety because the CDA immunizes online platforms like Facebook from liability related to the selection and removal of content created by third parties. The CDA states that "[n]o provider of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other active computer service." *Id*. § 230(f)(3).

1    Section 230 creates broad immunity from an array of claims that might arise

2    from content created by a platform's users.  *See id.* § 230(e)(3) ("[n]o cause of

3    action may be brought and no liability may be imposed under any State or local law

4    that is inconsistent with this section").  Courts have interpreted the CDA to preempt

5    civil rights claims and breach of contract claims, such as those alleged here, when

6    liability is based on third-party content.  *See, e.g., Goddard v. Google, Inc.,* 2008

7    WL 5245490, *5 (N.D. Cal. Dec. 17, 2008) (finding breach of contract claim based

8    on Google's failure to remove certain advertisements barred by Section 230(c)(1)

9    because it would hold Google responsible for third-party content); *Noah v. AOL*

10   *Time Warner, Inc.*, 261 F. Supp. 2d 532, 539-40 (E.D. Va. 2003) (finding federal

11   civil rights claim preempted and stating that "Congress did not intend to place

12   federal civil rights claims outside the scope of § 230 immunity"); *see also*

13   *Roommates*, 521 F.3d at 1175 (federal fair housing claims failed under CDA).

### 1.     The CDA's immunity extends to Facebook.

14

15   An "interactive computer service" "provides or enables computer access by

16   multiple users to a computer server . . ."  47 U.S.C. § 230(f)(2).  Every court to

17   consider the issue has found Facebook to be an interactive computer service.  *See,*

18   *e.g., Gaston v. Facebook, Inc.*, 2012 WL 629868, at *7 (D. Or. Feb. 2, 2012)

19   (finding that Facebook "clearly fall[s]" within the definition of "interactive

20   computer service"); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)

21   (same).  *See also Doe v. MySpace, Inc.*, 528 F.3d 413, 415 (5th Cir. 2008)

22   (applying the CDA to a social network); *Carafano v. Metrosplash.com, Inc.*, 207 F.

23   Supp. 2d 1055, 1065-66 (C.D. Cal. 2002) (applying the CDA to an interactive

24   dating service), *aff'd*, 339 F.3d 1119 (9th Cir. 2003).

### 2.     SFJ cannot pursue a claim against Facebook for removal of content.

25

26   The Ninth Circuit has held that "any activity that can be boiled down to

27   deciding whether to exclude material that third parties seek to post online is

28

1    perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71.  Here,

2    Plaintiff seeks to hold Facebook liable for its decisions to remove certain content in

3    India.  Facebook's conduct is squarely protected by the CDA.  *Id.* at 1184

4    (recognizing that "deciding whether to publish" content is an editorial function)

5    (quoting *Batzel v. Smith*, 333 F. 3d 1018, 1031 n.18 (9th Cir. 2003)).

6         In *Klayman*, a Facebook user contended that an alleged delay in removing

7    certain Facebook pages calling for Muslims to kill Jewish people was intentional

8    assault and negligence.  753 F.3d at 1355.  The court found that plaintiff's claims

9    were barred by the CDA because plaintiff was seeking to hold Facebook liable as a

10   publisher of the offending content.  "Indeed, the very essence of publishing is

11   making the decision whether to print or retract a given piece of content -- the very

12   actions for which [plaintiff] seeks to hold Facebook liable."  *Id.* at 1359.

13        Similarly, in *Levitt v. Yelp! Inc.*, 2011 WL 5079526 (N.D. Cal. Oct. 26,

14   2011), the plaintiff sought to hold an online consumer review site liable for

15   "removing certain reviews and publishing others or changing their order of

16   appearance."  *Id.* at *6.  The court found the site was immune under Section

17   230(c)(1) because the content at issue was entirely created by third-party users, and

18   the decision to publish some reviews and not others fell within the exercise of a

19   publisher's traditional editorial functions.  *Id.  See also, e.g., Zeran v. Am. Online*,

20   129 F.3d 327, 330 (1997)  ("[L]awsuits seeking to hold a service provider liable for

21   its exercise of a publisher's traditional editorial functions -- such as deciding

22   whether to publish, withdraw, postpone or alter content -- are barred."); *Mauzer v.*

23   *eBay*, 2008 WL 618988, *9 (N.D. Cal. Mar. 4, 2008) (finding eBay immune from

24   suit under Section 230(c)(1) because "[s]creening a potential auction house . . . is

25   akin to deciding whether to publish").

26        SFJ's claim that Facebook blocked access to the SFJ Page in India for

27   discriminatory reasons is irrelevant to the CDA analysis.  An online provider's

28   rationale for publisher decisionmaking has no bearing on Section 230(c)(1)

-7-

immunity.  *Levitt,* 2011 WL 5079526 at *8 (finding the motive behind Yelp's editorial decisions regarding whether to publish or de-publish reviews irrelevant for purposes of Section 230(c)(1) immunity).

Here, Plaintiff seeks to hold Facebook liable for its decision to restrict certain content appearing on Facebook's platform in India.  Facebook's election not to disseminate the SFJ Page in a particular country is clearly publisher conduct protected under the CDA.  Because all of Plaintiff's claims are based on the same alleged conduct, all of Plaintiffs claims are barred by the CDA and should be dismissed, with prejudice, on that basis alone.

## B. Plaintiff's Entire Complaint is Barred by the First Amendment.

Plaintiff complains that Facebook blocked access to its Facebook page in India based on the nature of Plaintiff's speech.  (Compl. ¶ 12.)  Facebook has a First Amendment right to make editorial judgments about what information appears on its platform and how it appears, and is not subject to civil liability for those choices.[2]  *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256-58 (1974) (rejecting right-of-access statute for newspapers as unconstitutional).

The recent decision in *Zhang v. Baidu.com Inc.,* 10 F. Supp. 3d 433 (S.D.N.Y 2014), is directly on point.  In *Baidu*, the plaintiff alleged that Baidu, which operates a Chinese search engine, blocked their "pro-democracy political speech"

---

[2] Plaintiff suggests that Facebook's decision to restrict access to the SFJ Page in India somehow infringes on Plaintiff's constitutional rights.  (*See* Compl. at 2 (accusing Facebook of "blocking access to Plaintiff's Facebook Page . . . [in] India" based on Plaintiff's "constitutionally protected political and human rights related activities").  But the First Amendment only protects against the government's interference with speech, and Facebook is not the government.  *See U.S. v. Alvarez*, __ U.S. __, 132 S. Ct. 2537, 2543 (2012) ("[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.") (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)).

1  from search results in the United States, and alleged violations of various federal

2  civil rights statutes and other laws.  10 F. Supp. 3d at 435-36.

3      The *Baidu* court recognized that "the First Amendment fully immunizes

4  search results from most, if not all, kinds of civil liability and government

5  regulation" because they are the result of the search engine's editorial judgments.

6  *Id*. at 438.  Because plaintiff's claims were based on the theory that Baidu exercised

7  editorial control by disfavoring certain political expression, allowing the suit to

8  proceed "would plainly 'violate[] the fundamental rule of protection under the First

9  Amendment, that a speaker has the autonomy to choose the content of his own

10  message.'" *Id*. at 440 (quoting *Hurley v. Irish-American Gay, Lesbian, & Bisexual*

11  *Group of Boston*, 515 U.S. 557, 573 (1995)).  The court granted Baidu's motion for

12  judgment on the pleadings and dismissed the action.  *Id*. at 444.

13      Facebook has the right to determine what content appears on its platform.

14  Here, Facebook restricted access to Plaintiff's Facebook page for users with IP

15  addresses in India, which was an editorial decision protected by the First

16  Amendment.  Plaintiff cannot hold Facebook liable for "what it does and does not

17  choose to say," as "one important manifestation of the principle of free speech is

18  that one who chooses to speak may also decide what not to say." *Id*. at 437

19  (internal quotations omitted).

20      Plaintiff's contention that Facebook's decision was based on the nature of

21  Plaintiff's speech is of no moment.  Facebook's reason for restricting access to

22  Plaintiff's page is irrelevant, as the First Amendment protects Facebook's choice

23  not to speak, no matter what the reason for that decision might be.  *See id*. at 440

24  (finding that a lawsuit based on a search engine's conscious decision to favor

25  certain expression on core political subjects over other expression on those same

26  political subjects violates the First Amendment); *see also Langdon v. Google Inc.*,

27  474 F. Supp. 2d 622, 630 (D. Del. 2007) (dismissing claims that search engines

28  excluded plaintiff's website and declined to publish his advertisements).  Plaintiff's

-9-

attempt to hold Facebook liable for judgments regarding what should appear in its social network "cannot be squared with the First Amendment," *Baidu* at 443, and Plaintiff's suit should be dismissed in its entirety.

### C.   Plaintiff Cannot State a Claim Under the Federal Civil Rights Act.

Plaintiff alleges that Facebook violated Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a, *et seq*. ("Title II"), by restricting access to the SFJ Page in India.  Plaintiff fails to state a claim, however, because Facebook is not a "place of public accommodation" within the meaning of Title II, and in any event, Title II does not offer a remedy for alleged discrimination occurring outside the borders of the United States.

#### 1.   Facebook's social media platform is not a "place of public accommodation."

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  Title II defines a "place of public accommodation" as:  "(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests . . . ; (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises . . . ; (3) any motion picture house, theatre, concert fall, sports arena, stadium or other place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."  42 U.S.C. § 2000a(b).

In *Noah*, the court determined that AOL's online user forums were not a "place of public accommodation."  The court explained that "'places of public

accommodation' are limited to actual physical places and structures, and thus cannot include chat rooms, which are not actual physical facilities but instead are virtual forums for communication provided by AOL to its members."  261 F. Supp. 2d at 541 (internal quotations omitted).  The court rejected plaintiff's argument that AOL's chatrooms qualify as a "place of . . . entertainment" under Section 2000a(b)(3), because "the statute's consistent reference to actual physical structures points convincingly to the conclusion that the phrase does not include forums for entertainment that are not physical structures or locations."  *Id*. at 541; *see also Weyer v. Twentieth Century Fox Film Corp*., 198 F.3d 1104, 1114 (9th Cir. 2000) (finding that "place of public accommodation," as used in the Americans with Disabilities Act, requires "some connection between the good or service complained of and an actual physical place").

Facebook's social media platform "does not exist in a particular physical location, [and] indeed can be accessed almost anywhere," and therefore lacks the physical presence necessary to constitute a "place of public accommodation" under Title II.  *Noah*, 261 F. Supp. 2d at at 544-45; *see also Young v. Facebook, Inc.,* 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (stating that "Facebook operates only in cyberspace, and is thus [] not a 'place of public accommodation'" under the Americans with Disabilities Act).

Accordingly, Plaintiff's second cause of action, alleging violation of Title II, must be dismissed with prejudice under Rule 12(b)(6).  As a consequence, the first cause of action, for a permanent injunction based on alleged violations of Title II, fails as well.

### 2.    Title II does not have extraterritorial application.

Facebook has found only one case that considered whether Title II applies to discrimination allegedly occurring outside of the United States, and the court rejected the notion of extraterritorial application.  *Alam v. P.I.A.*, 1995 WL

1720139, at *3 (S.D.N.Y. July 27, 1995).  Although Title II applies to "[e]stablishments affecting interstate commerce," and defines "commerce" broadly to include "travel, trade, traffic, commerce, transportation, or communication . . . between any foreign county . . . and any State," the court in *Alam* found "this language [ ] insufficient to overcome the 'long-standing presumption' against extraterritorial application of legislation in the absence of a clear Congressional intent to do so." *Id.* at *3.

Here, Plaintiff claims that Facebook restricted access to the SFJ Page in India, not in the United States.  Because Title II does not apply extraterritorially, Plaintiff cannot state a claim under Title II.[3]

### D.    Plaintiff Fails to State a Claim Under the Unruh Act Because the Alleged Discrimination Did Not Occur in California.

The Unruh Act states that "[a]ll persons *within the jurisdiction* of this state are free and equal, and . . . no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Civ. Code § 51 (b) (emphasis added).  By its plain language, the Unruh Act only applies to persons within California.  *Keum v. Virgin America Inc.*, 781 F. Supp. 2d 944, 955 (N.D. Cal. 2011) (granting judgment on the pleadings where plaintiff did not allege that discrimination occurred within California); *Sousanis v. Northwest Airlines, Inc.*, 2000 WL 34015861, at *7 (N.D. Cal. Mar. 3, 2000) ("the Unruh Act contains language expressly limiting its reach to 'all persons within the jurisdiction of this state'"); *Tat Tohumculuk, A.S. v. H.J. Heinz Co.*, 2013

---

[3]  Although Plaintiff does not allege that the decision to restrict access was made by Facebook in the United States, such an allegation would not save Plaintiff's claim. *See Souryal v. Torres Advanced Enterprise Solutions, LLC*, 847 F. Supp. 2d 835, 840 (E.D. Va. 2012).  What matters is where the discrimination was "implemented," which is alleged to be India.  *Id.*

WL 6070483, at *7 (E.D. Cal. Nov. 14, 2013) (stating that the court is not aware of any case law "applying section 51 to alleged discrimination suffered by parties outside of California").

As discussed with respect to Plaintiff's Title II claim, Plaintiff alleges that Facebook restricted access to the SFJ Page only in India.  SFJ is based in New York, but, even then, it alleges that any injury occurred in India.  (Complaint ¶ 10.) Plaintiff is unable to allege any discrimination within California, so its Unruh Act claim should be dismissed with prejudice.

### E.   Plaintiff Fails to State a Claim for Breach of Contract Because Plaintiff Has Not Alleged a Contract, Breach or Damages.

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages.  *First Commercial Mtg. Co. v. Reece*, 89 Cal. App. 4th 731 (2001).  Plaintiff fails to plead the first, third and fourth elements.

### 1.   Plaintiff has not alleged a contract or a breach.

The Complaint does not specify what agreement or contractual provision Facebook has allegedly breached.  In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached.  *Miron v. Hermalife Int'l, Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001); *see also Young,* 790 F. Supp. 2d at 1117 (dismissing breach of contact claim for failure to specify provision breached and the manner in which it was breached).

Even if Plaintiff offers more facts, the breach of contract claim still fails. The only contract that exists between Plaintiff and Facebook is Facebook's SRR, which Plaintiff's administrator agreed to on behalf of Plaintiff when he or she created Plaintiff's Facebook page (and Plaintiff continues to use Facebook under

1   the SRR today).[4]  *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y 2012)

2   (finding that Facebook's terms control its relationship with user).  There is no term

3   in the SRR that obligates Facebook to publish Plaintiff's content.  There is no

4   provision in the SRR that prohibits Facebook from removing or restricting access to

5   content posted by users such as Plaintiff.

6        To the contrary, the SRR expressly recognizes Facebook's right to remove

7   user content as it considers appropriate.  Paragraph 5.2 of the SRR states:  "We can

8   remove any content or information you post on Facebook if we believe that it

9   violates this Statement or our policies."  (Jordan Decl., Exh. 1 (SRR, ¶ 5.2).)

10  Facebook's Community Standards also recognize Facebook's right to remove

11  content as it deems necessary:  "To help balance the needs, safety, and interests of a

12  diverse community, however, we may remove certain kinds of sensitive content or

13  limit the audience that sees it."  (Jordan Decl., Exh. 2.)  Conduct expressly

14  authorized under the parties' contract cannot constitute a breach of that same

15  contract.  *See Young,* 790 F. Supp. 2d at 1117 (declining to find an breach of

16  contract where Facebook terminated plaintiff's account as outlined in Facebook's

17  terms); *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011)

18  (finding that online payment company did not breach user agreements by placing

19  accounts on hold where contract gave company broad discretion to do so).[5]

20       Because the only written agreement between the parties authorizes Facebook

21  to remove user content, and there can be no breach of contract based on conduct

22

23  ───────────────

24  [4] The SRR states that "[b]y using or accessing the Facebook Services, you agree to
    this Statement, as updated from time to time . . ."  (Jordan Decl., Exh. 1.)

25  [5] Any contention by Plaintiff that Facebook has some implied obligation not to

26  restrict access to the SFJ Page separate from the SRR fails.  "[W]hen a contract has
    been reduced to writing, a court must ascertain the parties' intent from the writing

27  alone, if possible."  *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir.
    1996) (citing Civ. Code § 1636).

28

expressly permitted under the contract, Plaintiff's breach of contract claim should be dismissed with prejudice.

### 2. Plaintiff has not alleged any actual damages.

In California, a breach of contract claim requires allegations of actual damages. *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060 (2002) ("An essential element of a claim for breach of contract are damages resulting from the breach."); *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract claim without damages is not actionable."). Conclusory allegations that plaintiff is entitled to damages or that plaintiff was injured are insufficient; Plaintiff must allege "actual and appreciable harm." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F. 3d 1010, 1015 (9th Cir. 2000)). "Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury." *Id.*

Plaintiff fails to articulate a theory of contract damage. Rather, Plaintiff merely alleges that it "was damaged" by Facebook "for losses sustained as a result of the loss of content on Defendant's social media service in India." (Compl. 8, ¶ 20.) The mere unavailability of content on their page does not constitute actual damage sufficient to support a breach of contract claim. *See Low*, 900 F. Supp. 2d at 1028.

### F. Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Under California law, "there is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960). The elements of a claim for breach of the implied covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's

1  performance occurred; (4) the defendant unfairly interfered with the plaintiff's

2  rights to receive the benefits of the contract; and (5) the plaintiff was harmed by

3  defendant's conduct." *Rosenfield v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d

4  952, 968 (N.D. Cal. 2010).

5      The covenant will not be implied "to prohibit a party from doing that which

6  is expressly permitted by the agreement itself." *Apple In-App Purchase Litig.*, 855

7  F. Supp. 2d 1030, 1042 (N.D. Cal. 2012) (citing *Carma Developers, Inc. v.*

8  *Marathon Development California, Inc.*, 2 Cal. 4th 342, 373 (1992)); *In re*

9  *Facebook PPC Advertising Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010) (the

10  covenant will not be implied where "no express term exists on which to hinge an

11  implied duty, and where there has been compliance with the contract's express

12  terms").  "If the allegations in a breach of implied covenant claim do not go beyond

13  the statement of a mere contract breach, and relying on the same alleged acts,

14  simply seek the same damages or other relief already claimed in a companion

15  contract cause of action, they may be disregarded as superfluous as no additional

16  claim is actually stated." *In re Facebook PPC Advertising Litig.,* 709 F. Supp. 2d at

17  770 (quoting *Schulken v. Wash. Mut. Bank*, 2009 WL 4173525, at *6 (N.D. Cal.

18  Nov. 19, 2009)); *Guz v. Bechtel Nat'l, Inc*., 24 Cal. 4th 317, 327 (2000).

19      Plaintiff cannot state a claim for breach of the implied covenant because its

20  claim is based on conduct expressly permitted under the SRR.  As discussed with

21  respect to Plaintiff's breach of contract claim, Facebook's SRR expressly permits

22  Facebook to "remove any content or information" that a user posts on Facebook if

23  Facebook "believe[s] that it violates" the SRR or its policies.  (Jordan Decl., Exh. 1

24  (SRR, ¶ 5.2).)  Because the SRR gives Facebook discretion to remove content on its

25  Platform, Facebook's decision to restrict access to the SFJ Page in India cannot

26  constitute a breach of the implied covenant.  *See Carma*, 2 Cal. 4th at 373 (rejecting

27  an implied covenant claim based on termination of a lease where termination was

28  expressly permitted by the agreement).

-16-

1    Moreover, Plaintiff's claim for breach of the implied covenant of good faith

2    and fair dealing is based on the same insufficient allegations as its breach of

3    contract claim, and should be dismissed as duplicative and superfluous.  Plaintiff

4    merely alleges that Facebook "unfairly interfered with Plaintiff's right to receive

5    the benefits of the contract" (Compl. ¶ 25), but does not explain how this occurred,

6    or otherwise allege any facts distinct from the breach itself.  Accordingly,

7    Plaintiff's claim for breach of the implied covenant should be dismissed.

8    **V.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE STRICKEN AND
9          FEES AWARDED UNDER THE ANTI-SLAPP STATUTE**

10          **A.    The State Law Claims Are Subject to Dismissal Under Section
               425.16 of the Code of Civil Procedure.**

11    In California, the summary resolution of First Amendment cases is favored

12    because of the burden litigation places on free speech.  *See Good Gov't Group v.*

13    *Superior Court*, 22 Cal. 3d 672, 685 (1978) ("because unnecessarily protracted

14    litigation would have a chilling effect upon the exercise of First Amendment rights,

15    speedy resolution of cases involving free speech is desirable").  Consistent with this

16    policy, Section 425.16 of the Code of Civil Procedure (commonly referred to as

17    California's "anti-SLAPP" statute ) provides "a mechanism through which

18    complaints that arise from the exercise of free speech rights 'can be evaluated at an

19    early stage of the litigation process' and resolved expeditiously."  *Simmons v.*

20    *Allstate Ins. Co.,* 92 Cal. App. 4th 1068, 1073 (2001).

21    Federal courts apply the anti-SLAPP statute in federal diversity actions, and

22    as to state law claims joined in federal question cases.  *United States ex rel*

23    *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir.

24    1999); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d

25    1127, 1129-30 (N.D. Cal. 1999).

26    California's anti-SLAPP statute involves a two-part, burden-shifting test.

27    *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).  First, the defendant must show that

28

-17-

the plaintiff's claims arise from defendant's activities in furtherance of the constitutional right of free speech in connection with an issue of public interest, as defined by the statute.  Civ. Proc. Code § 425.16(a).  These activities include any written or oral statement made in a place open to the public or a public forum in connection with an issue of public interest, or any other conduct in furtherance of the exercise of free speech in connection with a public issue or an issue of public interest.  *Id*. at § 425.16(e)(3), (4).

If the defendant meets its burden of showing that the claim falls within the scope of Section 425.16, the burden shifts to the plaintiff to show a probability of success on the merits.  The plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Navellier*, 29 Cal. 4th at 88-89.  The court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  Civ. Proc. Code § 425.16(b)(2).

Plaintiff's claims clearly fall within the scope of Section 425.16.  First, the *claim arises from a statement made in a place open to the public or a public forum in connection with an issue of public interest.  Id*. at § 425.16(e)(3).  "Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."  *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41, n.4 (2006).  In *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004), the court analogized the World Wide Web to a public bulletin board and the individual web sites to notices pinned to that board.  *See also, e.g., Wong v. Jing*, 189 Cal. App. 4th 1354, 1366 (2010) (Yelp! is a public forum); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005) (Yahoo! message board was a public forum).

The Facebook platform is "a place open to the public" because it is a free platform for speech accessible to anyone who consents to the SRR.  *See Wilbanks*, 121 Cal. App. 4th at 897 (website is a public forum even if the operator limits

1  access).  Plaintiff's allegations that Facebook violated Plaintiff's civil rights and

2  breached its contractual rights by restricting access to Plaintiff's public Facebook

3  page in India clearly implicates speech in a public forum under Section

4  425.16(e)(3).

5  Further, Plaintiff's claim arises from conduct in furtherance of the exercise of

6  free speech in connection with *a public issue or an issue of public interest*.  Civ.

7  Proc. Code § 425.16(e)(4); *see Rivero v. American Fed. of State, County, &*

8  *Municipal Employees*, 105 Cal. App. 4th 913, 924 (2003) (a public issue includes

9  "conduct that could directly affect a large number of people beyond the direct

10  participants").  Facebook provides an open forum for millions of users to

11  communicate and share information.  The availability (or restriction) of services on

12  the Facebook platform is necessarily of concern to many people.  Whether

13  Facebook is required to make a particular Facebook page accessible in every

14  country around the globe implicates free speech and is undoubtedly of public

15  interest.

16  Given that Plaintiff's claims under the Unruh Act, and for breach of contract

17  and breach of the implied covenant, are barred by the CDA and the First

18  Amendment, and Plaintiff is unable to allege those claims under the law, Plaintiff

19  cannot possibly prevail.  Civ. Proc. Code § 425.16(b)(1).  Accordingly, the Court

20  should strike all of Plaintiff's state law claims.

21  **B.    Facebook Should be Awarded its Attorneys' Fees and Costs.**

22  "[A] prevailing defendant on a special motion to strike shall be entitled to

23  recover his or her attorneys' fees and costs." Civ. Proc. Code § 425.16(c). The

24  California Supreme Court has interpreted this to mean that "any SLAPP defendant

25  who brings a successful motion to strike is entitled to mandatory attorney fees."

26  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); *see also Pfeiffer Venice*

27  *Properties v. Bernard*, 101 Cal. App. 4th 211, 215 (2002) ("[T]he award of attorney

28  fees to a defendant who successfully brings a special motion to strike is not

1  discretionary, but mandatory."); *Dove Audio, Inc. v. Rosenfield, Meyer, & Susman*,

2  47 Cal. App. 4th 777, 785 (1996) (requiring award of "reasonable attorney fees to a

3  prevailing defendant which will adequately compensate the defendant for the

4  expense of responding to a baseless lawsuit").

5       Accordingly, Facebook requests an order awarding its reasonable attorneys'

6  fees and costs.

7  **VI.    CONCLUSION**

8       For the foregoing reasons, Facebook respectfully requests that the Court

9  dismiss the entire action, with prejudice, pursuant to Rule 12(b)(6).  Facebook

10 further requests that the Court strike Plaintiff's state-law claims and award to

11 Facebook its attorneys' fees and costs.

12

13 Dated:  July 24, 2015                    PERKINS COIE LLP

14
                                           By: _____*/s/  Timothy L. Alger*_____
15                                              Timothy L. Alger

16                                         Attorneys for Defendant
                                           FACEBOOK, INC.
17

18

19

20

21

22

23

24

25

26

27

28