UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SIKHS FOR JUSTICE "SFJ", INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>FACEBOOK, INC.,<br><br>                    Defendant. | Case No. 15-CV-02442-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS**<br><br>Re:  Dkt. No. 13 |

Plaintiff Sikhs for Justice Inc. alleges that Defendant Facebook, Inc. violated federal and state law by blocking access to Plaintiff's Facebook page (the "SFJ Page") in India.  ECF No. 1 ("Compl.").  Before the Court is Defendant's motion to dismiss.  ECF No. 13.  Defendant also moves to strike Plaintiff's state law claims and for attorney's fees and costs pursuant to California Code of Civil Procedure § 425.16, California's "anti-SLAPP statute."  *Id.*  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to dismiss Plaintiff's federal law claim with prejudice and Plaintiff's state law claims without prejudice.  The Court DENIES as moot Defendant's anti-SLAPP motion to strike and for attorney's fees and costs.

1

Case No. 15-CV-02442-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

# I.      BACKGROUND

## A.  Factual Background

Plaintiff is a New York non-profit organization dedicated to human rights advocacy. Compl. at 6.  Specifically, Plaintiff focuses on the "plight of religious minorities of India and their treatment by successive Indian Governments" and promotes independence for Sikhs in the Indian state of Punjab.  *Id.*  The complaint alleges that Defendant is a Delaware corporation with a principal place of business in Palo Alto, California.  *Id.*  Defendant runs a web-based social media service called Facebook.  *Id.*

As part of Plaintiff's human rights advocacy, Plaintiff runs the SFJ Page at www.Facebook.com/sikhsforjusticepage.  *Id.* at 1.  To run the SFJ Page, Plaintiff allegedly "had a contract" with Defendant "for the use of Defendant's internet-based and physically-office-centered social networking site."  *Id.* at 13.  Through the SFJ Page, Plaintiff has organized a number of political and human rights advocacy campaigns, including promoting the right to self-determination for the Sikh people in Punjab and opposing the forced conversions of religious minorities to Hinduism that have allegedly taken place in India since the election of Prime Minister Narendra Modi in May 2014.  *Id.* at 2, 11.

On or about May 1, 2015, Defendant blocked access to the SFJ Page in India without prior notice or an explanation to Plaintiff.  *Id.* at 7-8.  According to Plaintiff, Defendant acted "on its own or on the behest of the Government of India," because of discrimination against Plaintiff and Plaintiff's members on the grounds of race, religion, ancestry, and national origin.  *Id.* at 3, 9-12. On May 15, 2015 and May 29, 2015, Plaintiff requested that Defendant restore access to the SFJ Page in India and explain why Defendant had restricted access.  *Id.* at 8.  Defendant did not substantively respond to Plaintiff's requests and did not restore access to the SFJ Page in India. *Id.*  As a result of the loss of content in India, Plaintiff allegedly sustained damages.

## B.  Procedural History

Plaintiff filed the complaint on June 2, 2015.  ECF No. 1.  The complaint alleges that Defendant violated one federal statute, Title II of the Civil Rights Act of 1964 ("Title II"), 42

Case No. 15-CV-02442-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

1   U.S.C. § 2000a.  *Id.* ¶¶ 1-13.  Plaintiff asserts two causes of action under Title II: a "first cause of

2   action" seeking a permanent injunction, and a "second cause of action" seeking damages.  *Id.*

3   However, it appears that these two causes of action are based on the same violation of Title II.  *See*

4   *id.*  Moreover, injunctive relief is a remedy, not an independent cause of action.  *See Free Kick*

5   *Master LLC v. Apple Inc.*, No. 15-CV-03403-PJH, 2015 WL 6123058, at *9 n.1 (N.D. Cal. Oct.

6   19, 2015) (citing *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal.

7   2010)).  Thus, the Court addresses the first two causes of action as one claim seeking both

8   injunctive relief and damages.  *See Rosenfeld*, 732 F. Supp. 2d at 975 (dismissing cause of action

9   for injunctive relief but noting that the plaintiff's remaining causes of action may warrant

10  injunctive relief).

11      The complaint also alleges three state law claims: (1) violation of the California Unruh

12  Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51-51.3; (2) breach of contract; and (3)

13  breach of the implied covenant of good faith and fair dealing.  Compl. ¶¶ 14-26.  The complaint

14  seeks a permanent injunction requiring Defendant to stop blocking access to the SFJ Page in India,

15  as well as compensatory and punitive damages, costs, attorney's fees, and the production of any

16  communications between Defendant and the government of India related to the SFJ Page.  *Id.* at

17  14-15.

18      On July 24, 2015, Defendant filed a motion to dismiss, a special motion to strike and for

19  attorney's fees pursuant to California's anti-SLAPP statute, and a request for judicial notice.  ECF

20  Nos. 13 ("Mot"); 13-2.[1]  Plaintiff opposed the motion to dismiss, the anti-SLAPP motion to strike

21

22  _____
    [1] The Court DENIES as moot Defendant's request for judicial notice.  ECF No. 13-2.  Under the
23  doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only
    documents attached to the complaint, but also documents whose contents are alleged in the
24  complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the
    document's authenticity is uncontested, and the document's relevance is uncontested.  *Coto*
25  *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see Lee v. City of Los Angeles*, 250
    F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa*
26  *Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  The Court may also take notice of facts not subject
    to reasonable dispute that are "capable of accurate and ready determination by resort to sources
27  whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Defendant requests
    judicial notice of Defendant's Statement of Rights and Responsibilities ("SRR") and Defendant's
28
    Case No. 15-CV-02442-LHK
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
    MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

1   and for attorney's fees and costs, and the request for judicial notice on August 4, 2015.  ECF No.

2   17 ("Opp.").  Defendant replied on August 14, 2015.  ECF No. 18 ("Reply").

3   **II.      LEGAL STANDARD**

4   **A.  Rule 12(b)(6) Motion to Dismiss**

5          Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

6   short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

7   that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a

8   plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

9   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

12  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

13  defendant has acted unlawfully."  *Id.*

14         For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

15  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

16  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The

17  Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

18  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's

19  complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

20  for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the

21  Court "assume the truth of legal conclusions merely because they are cast in the form of factual

22  allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere

23  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

Community Standards.  ECF No. 13-2.  The parties dispute whether these documents are
incorporated by reference in the complaint.  Because the Court does not rely on the SRR or the
Community Standards in ruling on the instant motions, the Court denies as moot Defendant's
request for judicial notice.

Case No. 15-CV-02442-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

1    dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

2        **B. Leave to Amend**

3        If the court concludes that the complaint should be dismissed, it must then decide whether

4    to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

5    amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

6    of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

7    technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

8    Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith

9    or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

10   previously allowed, undue prejudice to the opposing party by virtue of allowance of the

11   amendment, [and] futility of amendment."  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

12   522, 532 (9th Cir. 2008).

13   **III.    DISCUSSION**

14       Defendant contends that all of Plaintiff's claims are barred by the federal Communications

15   Decency Act ("CDA"), 47 U.S.C. § 230, and the First Amendment to the U.S. Constitution.  Mot.

16   at 5-9.  Defendant further contends that Plaintiff's claims fail to state claims for relief under Rule

17   12(b)(6).  *Id.* at 10-17.  Lastly, Defendant moves to strike Plaintiff's state law claims and for

18   attorney's fees and costs under California's anti-SLAPP statute.  *Id.*  at 17-20.  Because Plaintiff

19   brings the instant case under the Court's federal question jurisdiction, 28 U.S.C. § 1331, the Court

20   begins by examining whether Plaintiff can state a federal claim for relief.  The Court then turns to

21   Defendant's motion to dismiss Plaintiff's state law claims.  Finally, the Court addresses

22   Defendant's anti-SLAPP motion to strike and for attorney's fees and costs.

23       **A. Plaintiff's Title II Claim**

24       In the instant case, Plaintiff asserts one federal claim: discrimination under Title II.

25   Defendant moves to dismiss this claim on the grounds that (1) the CDA bars Plaintiff's claim; (2)

26   the First Amendment bars Plaintiff's claim; (3) Defendant does not offer a "public

27

28
Case No. 15-CV-02442-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

United States District Court
Northern District of California

accommodation" as required by Title II; and (4) Title II does not apply extraterritorially, to

discrimination occurring in India.  Mot. at 5-12.  As the Court finds below that Plaintiff's Title II

claim is barred by the CDA, the Court need not address Defendant's remaining arguments.

Defendant invokes § 230 of the CDA, which "immunizes providers of interactive computer

services against liability arising from content created by third parties."  *Perkins v. Linkedin Corp.*,

53 F. Supp. 3d 1222, 1246 (N.D. Cal. 2014) (quoting *Fair Hous. Council of San Fernando Valley*

*v. Roommates.Com, LLC ("Roommates")*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc)).

Specifically, § 230(c)(1) provides that "[n]o provider or user of an interactive computer service

shall be treated as the publisher or speaker of any information provided by another information

content provider."  47 U.S.C. § 230(c)(1); *see also Roommates*, 521 F.3d 1157 (holding CDA

protection extends to federal causes of action).  Thus, the CDA bars Plaintiff's Title II claim if: (1)

Defendant is a "provider or user of an interactive computer service;" (2) the information for which

Plaintiff seeks to hold Defendant liable is "information provided by another information content

provider;" and (3) Plaintiff's claim seeks to hold Defendant liable as the "publisher or speaker" of

that information.  *See* 47 U.S.C. § 230(c)(1); *see also Klayman v. Zuckerberg*, 753 F.3d 1354,

1357 (D.C. Cir. 2014).

Defendant contends that this case satisfies the three requirements for CDA immunity

because, according to Defendant, (1) Defendant is an "interactive computer service;" (2) Plaintiff

is solely responsible for the content of the SFJ Page; and (3) Plaintiff's Title II claim seeks to hold

Defendant liable for Defendant's decision to block the SFJ Page in India, a quintessential

publisher activity.[2]  The Court addresses these three requirements in turn.

---

[2] Although the CDA does not "declare[] a general immunity from liability deriving from third-party content," *see Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009), "courts consistently have used the term 'immunity' to describe the effect of the CDA's provisions," *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1195 n.1 (N.D. Cal. 2009) (citing, e.g., *Roommates*, 521 F.3d at 1161-75; *Carafano v. Metrosplash.com Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).  Moreover, immunity is defined as an "exemption from . . . liability," Black's Law Dictionary (10th ed. 2014), and "that is what § 230(c) provides, albeit not in every case," *Goddard*, 640 F. Supp. 2d at 1195 n.1.  With the recognition that cases involving the application of § 230 require a "careful exegesis of the

6

1       **1.  Interactive Computer Service**

2           Plaintiff does not dispute that Defendant is an "interactive computer service."  *See* Opp. at

3   3.  The Court also agrees that Defendant "provides or enables computer access by multiple users

4   to a computer service" as required by § 230.  *See* 47 U.S.C. § 230(f)(2) (defining interactive

5   computer service); *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801-02 (N.D. Cal.

6   2011) (finding that Facebook acts as an interactive computer service).

7       **2.  Information Provided by Another Information Content Provider**

8           Plaintiff argues that the SFJ Page is not "information provided by another information

9   content provider."  Plaintiff acknowledges that the CDA immunizes a website operator "for the

10  removal of 'third-party content,'" but argues that there is no "third-party content" in this case

11  because Plaintiff created the SFJ Page.  Opp. at 3.  Although Plaintiff's theory is not entirely clear,

12  it appears that Plaintiff denies the existence of "third-party content" because there are only two

13  parties in this litigation, Plaintiff and Defendant.  *See id.*

14          However, Plaintiff misunderstands the CDA.  By its terms, the CDA precludes publisher

15  liability against an interactive computer service for content created by "another information

16  content provider."  47 U.S.C. § 230(c)(1).  An "information content provider" is defined as "any

17  person or entity that is responsible, in whole or in part, for the creation or development of

18  information provided through the Internet or any other interactive computer service." *Id.*

19  § 230(f)(3).  "The reference to '*another* information content provider' . . . distinguishes the

20  circumstance in which the interactive computer service itself meets the definition of 'information

21  content provider' with respect to the information in question."  *Batzel v. Smith*, 333 F.3d 1018,

22  1031 (9th Cir. 2003); *see also Perkins*, 53 F. Supp. 3d at 1246 (noting that § 230's "grant of

23  immunity only applies if the interactive computer service provider is not also an 'information

24  content provider'" (quoting *Roommates*, 521 F.3d at 1162)).  In other words, the CDA immunizes

25

26  _____

27  statutory language," *Barnes*, 570 F.3d at 1100, the Court will maintain consistent usage and refer
    to the CDA's protections as "immunity."  *See Goddard*, 640 F. Supp. 2d at 1195 n.1.

28  Case No. 15-CV-02442-LHK
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
    MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

an interactive computer service provider that "passively displays content that is created entirely by third parties," but not an interactive computer service provider that acts as an information content provider by creating or developing the content at issue. *Roommates*, 521 F.3d at 1162. Put another way, "third-party content" is used to refer to content created entirely by individuals or entities other than the interactive computer service provider. *See id.* By contrast, the number of parties in a given litigation is irrelevant to CDA immunity.

In this case, the complaint asserts that the SFJ Page was provided by Plaintiff, not Defendant. Compl. at 1, 7. Additionally, the complaint details the various political campaigns "run and launched by the plaintiff" on the SFJ Page. *Id.* at 2-3. By contrast, the complaint nowhere alleges that Defendant provided, created, or developed any portion or content of the SFJ Page. *See generally id.*; *see also Batzel*, 333 F.3d at 1031 ("The pertinent question therefore becomes whether Smith was the sole content provider of his email, or whether [the defendant] can also be considered to have 'creat[ed]' or 'develop[ed]' Smith's email message forwarded to the listserv."). Instead, Plaintiff argues that "the content belongs to SFJ and was put on Defendant's online platform." Opp. at 3. Accordingly, only Plaintiff, not Defendant, acts as an information content provider in this case. As a result, the SFJ Page, which was created entirely by Plaintiff, is "information provided by another information content provider" within the meaning of § 230. *See Roommates*, 521 F.3d at 1162.

### 3.  Treatment as a Publisher

Defendant contends that Plaintiff's Title II claim arises from Defendant's decision to block access to—or, in other words, to refuse to publish—the SFJ Page in India, which Defendant asserts "is clearly publisher conduct" immunized by the CDA. Mot. at 8. Although Plaintiff does not respond to this argument, the Court will examine Plaintiff's claim to determine whether it is appropriate to apply the CDA's protection from liability. *Cf. Barnes*, 570 F.3d at 1109 (noting CDA immunity is an affirmative defense).

To determine whether a plaintiff's theory of liability treats a defendant as a publisher,

Case No. 15-CV-02442-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

"what matters is not the name of the cause of action." *Barnes*, 570 F.3d at 1101. Instead, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Id.* Consequently, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Id.* at 1102.

"[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* at 1102 (citing *Roommates*, 521 F.3d at 1170-71). Thus, "a publisher . . . decides whether to publish" material submitted for publication." *Id.* It is "immaterial whether this decision comes in the form of deciding what to publish in the first place or what to remove among the published material." *Id.* at 1102 n.8 (citing *Batzel*, 333 F.3d at 1032); *see also Roommates*, 521 F.3d at 1163 ("Congress sought to immunize the *removal* of user-generated content, not the creation of content . . . ."). In other words, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71.

Here, Plaintiff's Title II claim alleges that Defendant engaged in "blatant discriminatory conduct by blocking Plaintiff's content in the entire India." Compl. at 9-12. Plaintiff additionally avers that Defendant denied Plaintiff "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations" of Defendant's social media site by removing the SFJ Page in India based on Plaintiff's race, religion, ancestry, and national origin. *Id.* at 10, 12; *see also* 42 U.S.C. § 2000a(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."). Defendant argues that this claim is entirely based on Defendant's blocking of the SFJ Page in India, which is publisher conduct immunized by the CDA.

The Court agrees with Defendant. The Court is guided by *Barnes*, in which the Ninth

Case No. 15-CV-02442-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

Circuit addressed whether Yahoo enjoyed immunity against the plaintiff's claim that Yahoo was negligent in undertaking to remove offensive and unauthorized content posted about the plaintiff by her ex-boyfriend on one of Yahoo's public profile pages. *Barnes*, 570 F.3d at 1098-99. The Ninth Circuit found that the CDA barred the plaintiff's claim because the claim labeled as a "negligent undertaking" an action "that is quintessentially that of a publisher." *Id.* at 1103. As the Ninth Circuit explained, "one does not merely undertake; one undertakes *to do* something. And what is the undertaking that Barnes alleges Yahoo failed to perform with due care? The removal of the indecent profiles" posted on Yahoo's website. *Id.* Consequently, the Ninth Circuit found that the "duty that [the plaintiff] claims Yahoo violated derives from Yahoo's conduct as a publisher" and thus the CDA barred the plaintiff's claim. *Id.*

Similarly, in *Riggs v. MySpace, Inc.*, the Ninth Circuit found the plaintiff's negligence and gross negligence claims were barred by the CDA because the claims arose out of MySpace's "decisions to delete [the plaintiff's] user profiles on its social networking website yet not delete other profiles [the plaintiff] alleged were created by celebrity imposters." *Riggs v. MySpace, Inc.*, 444 Fed. App'x 986, 987 (9th Cir. 2011); *see also Levitt v. Yelp!, Inc.*, Nos. C-10-1321 EMC, C-10-1351 EMC, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011) (holding that the CDA immunized Yelp from allegations of extortion based on Yelp's "removing certain reviews and publishing others or changing their order of appearance").

As in *Barnes*, *Riggs*, and *Levitt*, Plaintiff seeks to hold Defendant liable for Defendant's decision "whether to publish" third-party content. *See Barnes*, 570 F.3d at 1102. In the instant case, Plaintiff argues that Defendant had a duty under Title II not to discriminate against Plaintiff. Compl. at 9-12; *see also* Opp. at 11 ("[Defendant's] conduct was motivated solely by unlawful discrimination against the national identity of India and the minority religion of Sikhs in India."). However, the act that Defendant allegedly conducted in a discriminatory manner is the removal of the SFJ Page in India. *See Barnes*, 570 F.3d at 1103 (examining the conduct underlying the plaintiff's claim of negligent undertaking). "But removing content is something publishers do,

10

1    and to impose liability on the basis of such conduct necessarily involves treating the liable party as

2    a publisher." *See id.*

3            Plaintiff responds that it merely seeks an explanation for why Defendant blocked the SFJ

4    Page in India.  However, Plaintiff cites no authority requiring such relief.  Rather, the CDA bars

5    all claims that seek to hold an interactive computer service liable as a publisher of third-party

6    content.  *See id*; 47 U.S.C. § 203(c)(1).  Indeed, "[i]t is because such conduct is *publishing*

7    *conduct* that we have insisted that section 230 protects from liability 'any activity that can be

8    boiled down to deciding whether to exclude material that third parties seek to post online.'"

9    *Barnes*, 570 F.3d at 1103 (quoting *Roommates*, 521 F.3d at 1170-71).  Further, Plaintiff seeks not

10   just an explanation for Defendant's action, but damages and an injunction requiring Defendant to

11   restore access to the SFJ Page in India.  *See* Compl. at 14-15.  Accordingly, the Court finds that

12   the CDA precludes Plaintiff's Title II claim.  *See Barnes*, 570 F.3d at 1102-03.

13           The Court concludes that granting leave to amend would be futile because this claim is

14   barred as a matter of law.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of

15   amendment can, by itself, justify the denial of a motion for leave to amend."); *see also Lopez*, 203

16   F.3d at 1130 (court may dismiss claim without leave to amend where "pleading could not possibly

17   be cured by the allegation of other facts").  Further, the CDA "must be interpreted to protect

18   websites not merely from ultimate liability, but from having to fight costly and protracted legal

19   battles."  *Roommates*, 521 F.3d at 1175.  Accordingly, the Court GRANTS Defendant's motion to

20   dismiss Plaintiff's Title II claim with prejudice.  *See Bonin*, 59 F.3d at 845.

21   **B. Plaintiff's State Law Claims**

22           Based on the Title II claim, Plaintiff brings this case under the Court's federal question

23   jurisdiction pursuant to 28 U.S.C. § 1331.  *See* Compl. at 7; *see also* 28 U.S.C. § 1331 ("The

24   district courts shall have original jurisdiction of all civil actions arising under the Constitution,

25   laws, or treaties of the United States").  Also based on the Title II claim, Plaintiff invokes the

26   Court's supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

27

28   Case No. 15-CV-02442-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
     MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

11

1   *See* Compl. at 7; 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original

2   jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

3   related to claims in the action within such original jurisdiction that they form part of the same case

4   or controversy under Article III of the United States Constitution.").

5        However, "[w]here a district court has dismissed all claims over which it has original

6   jurisdiction, it may sua sponte decline to exercise supplemental jurisdiction over remaining state

7   law claims" under 28 U.S.C. § 1367(c). *Nardico v. JP Morgan Chase & Co.*, No. C 12-4891 PJH,

8   2013 WL 1856683, at *7 (N.D. Cal. May 2, 2013) (citing 28 U.S.C. § 1367(c)(3); *United Mine*

9   *Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  In determining whether to decline

10  supplemental jurisdiction, courts consider whether the exercise of supplemental jurisdiction is the

11  interests of economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484

12  U.S. 343, 350 n. 7 (1988).  Moreover, "in the usual case in which all federal-law claims are

13  eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

14  doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law

15  claims." *Id.*; *see also Wren v. Sletten Const. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the

16  state issues apparently predominate and all federal claims are dismissed before trial, the proper

17  exercise of discretion requires dismissal of the state claim.").

18       By dismissing Plaintiff's Title II claim, the Court is dismissing the only claim over which

19  the Court exercises original jurisdiction.  The balance of factors in this case points in favor of also

20  dismissing Plaintiff's remaining state law claims.  Specifically, this case has yet to proceed

21  beyond the pleadings, and there has been no discovery conducted to date.  Few judicial resources

22  are wasted by dismissing the case at this stage, and dismissal promotes comity by allowing the

23  California courts to interpret state law in the first instance.  *See Pasillas v. Deutsche Bank Nat'l*

24  *Trust Co.*, 12-CV-04123-LHK, 2013 WL 5225982, at *5 (N.D. Cal. Sept. 17, 2013) (discussing

25  balance of factors).  Accordingly, the Court declines to exercise supplemental jurisdiction over

26  Plaintiff's state law claims and GRANTS Defendant's motion to dismiss Plaintiff's state law

27

28  Case No. 15-CV-02442-LHK
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
    MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

United States District Court
Northern District of California

12

1    claims without prejudice. *See Miller v. Cal. Dep't of Corrections*, No. 2:10–cv–02850–GEB–

2    DAD, 2011 WL 4433165, at *4 (E.D. Cal. Sept. 21, 2011) (dismissing without prejudice the

3    claims over which the district court declined to exercise supplemental jurisdiction).

4         As a result, the Court need not reach the merits of, and thus DENIES as moot, Defendant's

5    anti-SLAPP motion to strike and for attorney's fees and costs. *See Fotinos v. Sills*, No. C 12-3828

6    MEJ, 2012 WL 5870681, at *5 n.9 (N.D. Cal. Nov. 19, 2012) (denying anti-SLAPP motion as

7    moot upon dismissal of state law claims under 28 U.S.C. § 1367(c)); *Ravet v. Solomon, Ward,*

8    *Seidenwurm & Smith, LLP*, No. 07 CV 0031 JM(CAB), 2007 WL 2088381, at *7 (S.D. Cal. July

9    17, 2007) (same).

10   **IV.    CONCLUSION**

11        For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's

12   Title II claim with prejudice and Plaintiff's state law claims without prejudice.  The Court

13   DENIES as moot Defendant's motion to strike and for attorney's fees and costs.  The Clerk shall

14   close the case file.

15   **IT IS SO ORDERED.**

16

17   Dated:  November 13, 2015

18                                        _____

19                                        LUCY H. KOH
                                          United States District Judge

20

21

22

23

24

25

26

27

28   Case No. 15-CV-02442-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S
     MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS

13

United States District Court
Northern District of California